Good morning, Your Honors. Ronald Lee Scevo on behalf of the appellant, Kai Lee. First, I would just note that the issue on appeal is actually a very discreet one of insurance policy interpretation. The subject language that is on appeal is actually, there's not much from the policy and it's up to this court to conduct de novo review of the district court's determination as to the meaning of the policy language. First, and I've looked at in reviewing for preparing for oral argument, I looked at the briefing. I think the briefing fairly sets forth the relevant points on appeal. It's pretty complete, so I'll confine my comments to what I believe are just a few extra things that weren't mentioned in the briefing. First of all, the state farm policy we have in this case has the same limit of liability language that the district court found to permit so called stacking in the attained decision, which is cited in our brief, with the caveat that the policy here adds what State Farm contends is so-called anti-stacking language. But our basic position is that the added language only conflicts with the provision that attain held permit stacking. And the point I want to make is that the district court's opinion is to how the provision that attain held permit stacking with the provision that State Farm contends does not permit stacking, is incredibly cursory with respect to its explanation of how the two provisions harmonize. And it provides no real guidance or explanation at all. And so I believe that on that point I welcome to NOVA review to provide an explanation that is, I think, that it would be actually understandable. I would just note that if someone like my client reads one provision, understands that it permits stacking, as did attain, they're not going to read the other provision and understand that the two provisions somehow harmonize to prevent stacking. So what is the effect of the no additional limits or coverage will be available for the occurrence or offense under any additional years? If the policy remains enforceable, what does that do? So that's problematic for two reasons. First of all, it's notable that the district court, in its opinion, omitted the full language and text of that provision that Your Honor just read, which is that the language, that the full quote includes the statement that for the additional years that this policy remains in force. And I'm seizing on that phrase, this policy, because it then is unclear whether this policy means, is confined to the temporal period of the policy at issue or somehow extends to other policies that the insured may obtain by way of renewal. And so on that point, I would say that this policy could easily be read to be understood by an insured to understand that the policy limitations only apply to the temporal period covered by the policy at issue. I think it is notable that the district court, for whatever reason, chose to omit the full sentence in its opinion in stating how the paragraphs are harmonized. I would say that, and secondly, so the first point is obviously that the conflict between the two provisions, the one that the court held was permit stacking and the other provision that State Farm contends does not, creates an ambiguity that should result in favor of coverage. Secondly, and more problematically, even if we assume for the sake of argument that the so-called anti-stacking provision can be harmonized with the other provision, there's absolutely no language in the policy to address the question raised by the Court of Appeal, California Court of Appeal, in the ABS clothing case, and by this court, in its opinion in Karen Kane, which is whether the policy contains language that is clear and unambiguous, that a renewal of the policy does not create a separate contract. And so I understand, this policy, he had the policy for four years? It renewed it, yeah, it was over a period of several years, correct. And, like, there was one policy number during that whole period of time. Correct, there was one policy number, that's correct. But, and, but your view is that each year is a, is a different policy so that this policy language doesn't refer to the other years? That's, that's correct. That's the basic argument. And the one thing that's notable is that upon renewal, State Farm expressly reserves its right to change and alter the terms of the new policy that it issues. And so, and this is an issue, frankly. And what do we do with the, I mean, so the policy defines a policy period, which is, if I understand correctly, a single year. Correct. And then has provisions about renewal. And both of those things together kind of suggest that, you know, the policy period may be one year, but the policy itself is something that extends longer than that and that the renewal is not creating a new policy.  It's renewing the policy. Sure, that's one read of the policy and that would be State Farm's position. Why is that wrong? Well, it's wrong because the reservation of rights to change the terms of the policy is explicit and it comes in the declaration page. And, for example, I would submit that for, should the court come to a different conclusion as to the meaning of the policy and conclude that stacking is allowed, that State Farm in subsequent iterations of the policy will change its policy language for precisely that purpose, to try to ameliorate the effect of this Court's holding, the point being that it's not as if State Farm is unequivocally committing to have issue, reissue policies that are on the exact same terms. It's expressly reserving the right to alter the terms of the policy as it sees fit. And so I would submit that there is no insured who would, if they understood that upon renewal that you were obtaining a new contract, I would submit that there is not an insured who would expect that the limitation of liability would also apply to the issuance of a new policy. So the question is whether or not that that would be a plausible reading of the policy by an insured, assuming they actually read the policy, of course. But, and I was, and so what is notable is that this was an argument made in summary judgment and the district court did not address it at all. It just glossed over it other than to, other than, as I mentioned, omitting the full quote of the policy in its opinion. So, but it seems to me that the question is critical as to whether or not the renewal creates a separate contract because the insured could easily understand, again, from the so-called anti-stacking clause, that limits coverage for this policy to mean that the limit of coverage is temporarily confined to the annual policy for which language appears. And here, and the standard as adopted by this court following the California Court of Appeal decision in ABS holding is that such statement has to clearly and unambiguously appear in the policy and there is nothing to that effect as to what the effect of the renewal is. In other words, if State Farm intended that the renewal not be considered a new policy, that needs to be in the policy itself and there's nothing in there that says as much. And then the next point I would make is that ABS clothing and Karen Cain reflect a statement of California law and this court in Karen Cain discussed at some length why the district court in that case was bound to follow the statement of California law set forth in ABS clothing. And this court concluded there was no reason to think that the California Supreme Court would decide the law differently than the Court of Appeal. And I think that's something to note here. There's no reason to think that the California Supreme Court would not apply the analysis in ABS clothing in this case. It's also worth noting that State Farm is unable to cite any contrary authority under California law. Rather, State Farm cites a Federal case that applied Hawaii law and the court should decline State Farm's invitation to follow law from another state that came out differently from the analysis set forth in ABS clothing in Karen Cain on the question of whether successful renewals create new contracts. Could I ask you to say a bit about your argument about multiple occurrences? I tried to find the settlement agreement between your client and Ms. Chung and I didn't see that that's in the record. I don't believe it is, Your Honor. So, how are we to... I mean, your argument is... or part of your argument is she had multiple claims and maybe they arose on different occurrences.  But how are we to figure out what the settlement was for? Well, the complaint... I think it was a general release. I'm not sure the settlement agreement would be much help to the court, honestly. So what... I think the complaint itself... What we have are the complaint and the opinions of defense counsel upon which State Farm relied in settling the case. And the opinions of counsel are in the record. It was argued on summary judgment and that included an independent damages number and assessment of other claims besides the catastrophic personal injury claim. That was obviously what made the case potentially worth two to four million dollars had it gone to trial. And where is that in the record? It's... the summary judgment papers... No, no, the analysis that gave a breakdown as to the different projected damages. I believe it's in my brief, Your Honor. I mean, good question. I'm not citing you to the specific point. But I do note that the... the defense counsel actually said that it was... had an independent value. But admittedly, it was a much smaller claim than was the, you know, the rent ordinance violations, the wrongful eviction-type claims and so forth that were all independently evaluated. It was a much smaller value than were the other claims. And so the point I made in my brief was simply that, even though, admittedly, those claims were much smaller, those claims were completely independent and did actually occur over a period of... No, I understand that from... I just don't... I share Judge Miller's question, which is, how do we value that now in terms of the ultimate settlement? Well... How it contributed to the ultimate settlement. Well, I would... Okay. So my view, you know, as... because I do landlord-tenant litigation in San Francisco, is that, of course, there were two things. One, obviously, was the total value of the claim had it gone to trial would have been catastrophic for my client. He would have lost everything. So in terms of...  But you're arguing there's value in other occurrences that were... Correct. And how do we assess that? Well, I think we're left with the evaluation of defense counsel, that I submit is in the record, but notwithstanding my inability to cite it specifically right now. But I think it assessed it as in the range of, I think, $10,000 to $20,000 as a separate claim. So it was obviously the small claim, relatively speaking. But nonetheless, the point remains that to the extent that claim did cross policy lines or policy periods, that that was an argument made on summary judgment and the district court didn't address it at all. So, with regard to... And if the district court hadn't, had you prevailed on that notion, or that position, you would have gotten another $300,000 would have been available? Well, it would have required an independent assessment of, it would have at least triggered, implicated more coverage for those ongoing claims. But it would be limited to the value of those other... That's correct. And I'm not submitting otherwise. But I am also saying that a jury trial with regard to rent ordinance violations is potentially significant. The other thing I would say is that one point I really want to emphasize, and I know my time is short, is that this court and ABS Clothing both expressly acknowledged that it would not be within the reasonable expectation of the insured that by renewing their policy they were thereby limiting the available coverage for an event, an occurrence that crossed policy lines or policy periods. And so, and in fact this court went as far as to say that that would not be, in the Karen Cain opinion, expressly said that would not be within the reasonable expectations of the insured which this court characterized as the touchstone for interpreting these policies. My client certainly did not understand that by renewing his policy was thereby limiting the available coverage to him in the event of any kind of injury like this. So, I would submit that that is something that is not within his reasonable expectations nor would it be with anybody's. And so, I think that's an important thing to consider when we're looking at whether or not this policy, whether or not there's separate contracts or not. Thank you. Thank you, Mr. Schievo. You've used up your time, but we'll give you a minute for rebuttal. Thank you. Mr. Roberts. Thank you, Your Honor. May it please the Court, I'm Todd Roberts. I represent State Farm General Insurance Company for at least two reasons. The judgment in favor of State Farm should be affirmed. First, because the only evidence of compensable bodily injury to Rosa Chung occurred in the 2018-2019 policy period in the weeks immediately preceding the July 15 carbon monoxide poisoning event. But even if bodily injury occurred before then, summary judgment was proper because State Farm policy language restricted the payment of liability insurance benefits to a $300,000 policy limit where the damages spanned multiple periods of time. And it accomplished this by incorporating the anti-stacking language that the California Supreme Court has confirmed is allowed and can be adopted by insurance companies in California. The pertinent language in the State Farm policy is in the limits of liability section applicable to Section 2 and read specifically that the most we will pay for the sum of all damages because of bodily injury arising out of any one occurrence is the coverage L liability limit shown in the declarations in this instance $300,000 for the policy period during which the injury or damage first occurs. And then the rule stated is that no additional limits or coverage will be available for the occurrence or offense under any additional years that this policy remains in force. That language is important because I think it completely disposes of Mr. Scevo's argument to the effect that no reasonable insured would consider each policy renewal to be the same policy. In this policy it is clear that State Farm considers that a single contract that is renewed annually and it does that including by reference to this particular language. The language is also very important because the case upon which my friend principally relies is attained specialty decision which was a case that allowed stacking of limits. But the language that State Farm has incorporated in its policy that was absent in the California capital policies at issue in the attained specialty case, it mimics the language of the Court of Appeals decision in the very last paragraph. It says where they allowed stacking. It says the policies do not indicate that the per occurrence limit applies across policy periods. That's precisely what the State Farm policy does that the attained specialty court says was absent in that case. So my friend also mentioned that he could not harmonize or it could not be harmonized with the aggregate limits of liability section where the policy renews annually and a new separate limit applies. The St. Paul vs. Bodell case, the Hawaii case that he referred to specifically states that that proviso does not mean you get an additional full limit for the occurrence that has already commenced. What it means is that you get a new policy limit for a new event, for a new event, for a new   case where Chung sustains acute carbon monoxide poisoning in the 2018 to 2019 time frame, there's a brand new policy limit of $300,000 for the next annual period if somebody slips and falls and breaks their leg. That's how the language is harmonized in the limits of insurance provision. The argument really kind of depends on the fact that you think there's only one occurrence, correct? There is only one occurrence that resulted in injury as a result of exposure to carbon monoxide. The argument could be made that every time he replaced the monitoring device defectively, that could constitute a separate occurrence. I'm not sure he's making that argument, but as I read it, it looked like there were multiple potential occurrences. The damage is the same, carbon monoxide, but you could argue that with the proper monitoring equipment, you could have discovered it earlier. You could make that argument in almost every single case. But here's the point. You could argue that, well, there was an occurrence in 1985 when the wall furnace was negligently installed and vented. There was a negligent occurrence when the thermostat was not replaced properly or the burner was not placed properly. But what the courts focus on in California is the language in occurrence that is an accident including repeated exposure conditions and the focus is on the cause of the damage. And I think we pointed out the clearest case... Taking your point, you could argue that each of those separately caused different damages within the period of time. Temporal time. Now, I'm not sure he's making that argument, but it just struck me when I was looking at that that this was arguably a multiple occurrence case. I would respectfully disagree because one, they haven't made the argument and the proper focus is on the source of the damage. We've cited the specifically for that very purpose where it was a landslide. In a landslide case, it could be multiple sources. It could be negligent grading. It could be overwatering. It could be triggered by failure to provide subjacent lateral support. There could be a host of reasons that factor into the end result, which is the landslide. Same thing here. Improper venting may be negligent maintenance, but the source of the injury is the same. It is the defective wall heater. That's Safeco versus Fireman's Fund, which found that when all injuries result from a single source, there is only one occurrence. Here, the only occurrence or the proper focus is on the source of the injury, the carbon monoxide event, and that's the wall furnace. The negligent maintenance and the installation of that. There are other occurrences alleged on different theories, habitability and so forth. I tried to look at your reservation of rights letter. The reservation of rights for some reason, at least in my copy excerpts, is only partially there. Did you reserve on all those? I just have to ask you. Yes. We reserved rights and State Farm did exactly what it should do under the circumstances. By the way, none of the habitability claims are covered under the policy. I understand your argument, but in the version of the reservation of rights letter, which is not complete, I didn't see it, so that's why I'm asking. Yes. State Farm, as I said, did exactly the right thing. It defended the entire action and it settled the entire action. What is missing in the record is any suggestion that State Farm and Mr. Lee in their $1.2 million settlement package that they agreed upon, had to pay any additional amounts because of those collateral claims of, you know, there was mold in the wall, there was excess moisture. There's nothing in the record that suggests that. In fact, my friend Mr. Skeeto Or the opposite. I mean, at least you can point me to something in the record. I just didn't see anything that allocated the settlement. They're just a settlement. My memory is consistent with my friends and that is that there was evidence in the record. I did look at his reference in the brief and it didn't seem to go to anything. So I will rely on his admission that the potential damages were $2 to $4 million and I think as lawyers we can agree that the damages from the acute carbon monoxide poisoning event in July of 2019 greatly dwarfed $1.2 million. It resulted in permanent injuries, hospitalization, permanent care required and things of that nature. And so State Farm did the right thing by recognizing its obligation to pay the $300,000 in packaging it and I would just state that this tragic result at least from the standpoint of Mr. Lee could have been avoided had he chosen to insure himself with a higher policy limit or a commercial liability umbrella policy or an excess policy. But from the standpoint of When you mention that in your brief that's what you're referring to because I took the statement that he could have had the opportunity to buy his way out of the anti-stacking clause. If I'm understanding you today you said he could get excess, he could get umbrella, he could do something else. It still would have been a single occurrence event and ultimately I don't think it matters that if there was not anti-stacking language in the context of this case because this is not a long tail damage injury case as was the situation in Continental Casualty where we're dealing with environmental waste dumped into the Stringfellow acid pits in Southern California or the Pigeon Dust case of a tamed specialty where there is an indivisible injury that occurs progressively over a period of time That's not this case This is not a long tail case. There is no independent damage in any policy period that predates the one that was issued by State Farm Unless the court has any additional questions I'll just close I did wonder about the other, the non-bodily injury towards the nuisance and habitability Why don't they fall within the policy coverage for personal and advertising injury? Because the only one that would potentially qualify was the cause of action or the offense of wrongful eviction. But that is causally related to and inextricably linked with the same occurrence which is the defective wall heater. The other claims are habitability claims and there's no express provision in the policy that extends to those It used to be the case that the policies would apply to invasion of the right of private occupancy which the courts found could extend to habitability claims This policy language is different. It is narrowly focused to wrongful entry or invasion of privacy into the room of the person There is no invasion of right of private occupancy Those claims are outside the scope of the insuring agreement in the first place And what about the I thought that in California under Martin Marietta at least in certain contexts a nuisance could be treated as an invasion or wrongful entry into the property So So the nuisance I will refer the court's attention to again the Safeco case that also involved a nuisance claim and that was and I think that argument was expressly rejected because the insured pointed to post-landslide nuisance which was a continuing nuisance claim in that case the court found that it was all causally related to the landslide so it didn't matter if it continued into the next period or not and again because of the limits of liability section in our policy the anti-stacking language would also apply to that. It applies to both the family injury and the personal and advertising injury offense And I gather State Farm did not file a DEC action We did not file a DEC action Thank you Rebuttal Thank you Just briefly First this is actually more like a long tail injury situation This was progressive carbon monoxide poisoning and the treating neurologist we submitted that evidence at summary judgment who pegged the onset of the injury at the time the heater began to malfunction several years prior to the catastrophic event that led to the hospitalization Secondly with regard to the wrongful eviction claim being the same as the heater malfunction that's disputed as well We didn't get a chance to litigate sort of that issue because the district court glossed over never made a decision with respect to whether the other What were the bases that you allege were the wrongful eviction The wrongful eviction it was actually more broadly stated under the umbrella of violation of San Francisco Rent Ordinance Section 37.10b which enumerates a laundry list of landlord tenant so called anti-harassment is the label but it actually laundry list a set of prohibited activities as to the landlord and so the allegation was that there were a whole host of habitability defects including water intrusion and so on and so forth and then it was also the thrust of it was to that these were failure to repair was all calculated to drive the tenant out of the unit so that was the thrust of the allegation. We never actually litigated that issue because the district court didn't reach sort of the other claims were covered could have been covered whether they were also possible other occurrences so the other point I just want to make is that even if as counsel said the so called anti-stacking language addressed the issue that was found to be missing in attain that argument fails if these successive renewals are treated as independent contracts so that is and so and I just would just conclude by pointing to if these are not successive contracts ABS clothing made a comment that's apt here that the premium payments for three years of coverage which in fact did not exist those were things that were being made by my client so on that basis submitted. Thank you very much. Thank both counsel for their arguments and the case is submitted and we are adjourned.
judges: THOMAS, PAEZ, MILLER